·Keith BROWN, Appellant,

v.

Marlene BROWN, Jason Brown, Christopher Erblich, Dennis Brown, and Janine Hutchinson Smith, Respondents.

No. ED 104411

Missouri Court of Appeals, Eastern District, DIVISION FOUR.

Filed June 13, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 2017

Application for Transfer to Supreme Court Denied October 31, 2017

FOR APPELLANT: Michael T. George, 3636 S. Geyer Road, Suite 100, St. Louis, Missouri 63127.

FOR RESPONDENTS: Robert J. Selsor, 100 S. Fourth Street, Suite 1000, St. Louis, Missouri 63102, Brian E. McGovern, Robert A. Miller, 825 Maryville Centre Dr., Ste. 300, Town & Country, Missouri 63017, Anthony M. Pezzani, 13321 N. Outer Forty Road, Suite 300, Chesterfield, Missouri 63017.

## OPINION

James M. Dowd, Presiding Judge

Keith Brown ("Appellant") appeals the trial court's judgment entered in favor of Respondents after a bench trial. The court rejected Appellant's claims for breach of fiduciary duty against Marlene Brown, Jason Brown, and Christopher Erblich as the trustees of the Harlin Brown Revocable Living Trust ("the Trust"), and the court awarded attorney's fees to Marlene Brown in her capacity as a trustee. Appellant asserts five points of trial court error: (1) that the court erred by failing to find that the trustees breached their fiduciary duties to the Trust; (2) that the court erred by admitting certain evidence of Appellant's conduct which he claimed was inadmissible character evidence; (3) that the court erred by failing to sua sponte recuse itself after admitting the above-described evidence; (4) that the court abused its discretion in connection with its assessment of the credibility of the witnesses at trial; and (5) that the court abused its discretion by awarding attorney's fees to Marlene Brown in her capacity as a trustee. We affirm.

## Factual and Procedural Background

On October 10, 1995, Harlin Brown ("Grantor") executed the Trust, which was restated on June 5, 2001 and amended by Grantor numerous times prior to his death on January 15, 2007. From the creation of the Trust until his death, Grantor was the sole trustee. At the time of his death, Grantor was married to Marlene Brown and she became co-trustee on the date of her husband's death. Christopher Erblich, an estate planning attorney who assisted Grantor in executing the Trust, also served as co-trustee from Grantor's death until May 14, 2009. Jason Brown, one of Grantor's sons, served as co-trustee with Marlene Brown from May 14, 2009, until December 31, 2012.

On May 12, 2011, Appellant, who is Grantor's eldest son, filed this lawsuit against Marlene Brown, his brother Jason Brown, and Christopher Erblich. Marlene Brown and Jason Brown were sued both in their individual capacities as beneficiaries of the Trust, and in their capacities as trustees. On July 25, 2012, Appellant filed his first amended petition which joined as interested and necessary parties Appellant's brother Dennis Brown, and Marlene Brown's daughter Janine Hutchinson Smith, both of whom were also beneficiaries of the Trust. And on September 12, 2012, Appellant filed his second amended

petition, which added the breach-of-fiduciary-duty claims at issue on this appeal.

On April 7, 2014, Marlene Brown and Christopher Erblich filed counterclaims against Appellant for attorney's fees.

■ The case was tried by the court over the course of three days in mid-October 2014. On July 29, 2015, the court entered judgment in favor of Respondents on Appellant's second amended petition, and in favor of Marlene Brown and Christopher Erblich on their counterclaims for attorney's fees, with the amount to be determined at a later date by the court.[1] On April 19, 2016, the court entered an award of attorney's fees in the amount of $127,837.51 in favor of Marlene Brown and Christopher Erblich.

This appeal follows. Additional facts, as relevant, are provided below.

## Standard of Review

In a court-tried case, we affirm the judgment below if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *In the Estate of McKenna*, 500 S.W.3d 850, 855 (Mo.App. E.D. 2016) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976)). We view the evidence in the light most favorable to the trial court's judgment, disregarding all contrary inferences and evidence. *Id.* (citing *In the Matter of S.J.M.*, 453 S.W.3d 340, 342 (Mo.App.E.D. 2015)). So long as the trial court's factual determinations are supported by competent, substantial evidence, we defer to them "because [the trial court] is in a better position not only to judge the credibility of the witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *Pearson v. Koster*, 367 S.W.3d 36, 44 (Mo.banc 2012) (citing *White v. Dir. of Revenue*, 321 S.W.3d 298, 308-9 (Mo. banc 2010)).

## Violations of Rule 84.04

Before we discuss Appellant's several points on appeal, we are compelled to note that Appellant's second, third, and fourth points relied on violate our briefing rules. Rule 84.04(d)(1)(A)[2] requires that each point relied on identify the trial court ruling or action that the appellant challenges. Appellant's fourth point fails to comply. Rule 84.04(e) requires that the appellant's arguments be limited to those errors included in the "Points Relied On." Appellant's arguments under his second and third points violate this rule.

■ Compliance with the Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and arguments that have not been asserted. *Null v. New Haven Care Ctr., Inc.*, 425 S.W.3d 172, 177 (Mo.App.E.D. 2014). Rule 84.04 violations constitute sufficient grounds for dismissal of an appeal. *Al-Hawarey v. Al-Hawarey*, 388 S.W.3d 237, 241 (Mo.App.E.D. 2012). Even so, we have the discretion to review non-compliant

---

1. Appellant argues for the first time in his reply brief that the trial court's ruling cannot stand because over the course of nine months it became scientifically likely that the court could no longer remember the testimony at trial. Appellant requests that we "align the law with the science of forgetting and mandate either formally or through dicta that trial judges must reach a judgment in a set time period, or the judgment is considered error." Respondents have filed a motion to strike this argument from Appellant's reply brief. While we do not grant the motion to strike, we reject Appellant's argument because it is not supported by any legal authority.

2. All rules references are to the Missouri Supreme Court Rules (2016).

briefs *ex gratia* where the argument is readily understandable. *Scott v. King*, 510 S.W.3d 887, 892 (Mo.App.E.D. 2017) (citing *Null*, 425 S.W.3d at 177-78). We cautiously exercise this discretion because each time we review a noncompliant brief *ex gratia* ("[a]s a favor; not legally necessary," *Ex gratia*, BLACK'S LAW DICTIONARY (9th ed. 2009)), we are concerned that the party who filed the brief might look past the fact that it is being reviewed not out of legal necessity but as a favor, and might conclude that substandard briefing is somehow acceptable, even though Missouri authorities state univocally that it is not. *See, e.g.*, *Scott*, 510 S.W.3d at 892 ("[E]ach time we review a noncompliant brief ex gratia, we send an implicit message that substandard briefing is acceptable. It is not.").

Nevertheless, we review *ex gratia* Appellant's deficient points relied on but only to the extent the content of each argument has been properly preserved or can be readily ascertained.

### Points I and IV: The Claim for Breach of Fiduciary Duty Against the Trustees

In his first point on appeal, Appellant contends that the trial court erred by failing to find that the trustees breached their fiduciary duties to the Trust. And in his fourth point—which we consider not as an independent point but as a supporting argument for his first point—Appellant asserts that the court abused its discretion in connection with its assessment of the credibility of the witnesses at trial relating to their testimony about the distributions to Marlene Brown. We find no error because Appellant has failed to show that the trial court's ruling was unsupported by substantial evidence, was against the weight of the evidence, or was based on an erroneous declaration or application of the law.

To prevail on a claim of breach of fiduciary duty, a plaintiff must show: (1) the existence of a fiduciary duty; (2) a breach of that fiduciary duty; (3) causation; and (4) harm. *Matter of Wilma G. James Trust*, 487 S.W.3d 37, 48 (Mo.App.S.D. 2016). Trustees have a duty to administer a trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with applicable law. § 456.8-801.[3] The trustee is bound to uphold the validity of a trust, preserve the trust assets, and carry out completely the grantor's intent. *Murphey v. Dalton*, 314 S.W.2d 726, 732 (Mo.banc 1958). In general, the presumption is that a trustee administers the trust in good faith and the burden of proving the contrary is on the party questioning the trustee's actions and seeking to establish a breach of trust. *Barnett v. Rogers*, 400 S.W.3d 38, 48 (Mo.App.S.D. 2013).

In determining the meaning of trust provisions, the paramount rule of construction is that the grantor's intent is controlling and such intention must be ascertained primarily from the trust instrument as a whole. *O'Riley v. U.S. Bank, N.A.*, 412 S.W.3d 400, 406 (Mo.App.W.D. 2013) (citing *First Nat'l Bank of Kansas City v. Hyde*, 363 S.W.2d 647, 652 (Mo. banc 1962)). A grantor is presumed to know and intend the legal effect of the language he uses in the trust. *Id.* And where the language used is clear and of well-defined force and meaning, it must stand as written. *Id.*

Appellant argues that the trustees in connection with the distributions to Marlene Brown failed to follow the terms of the Trust and made excessive distributions, and, thus, failed to act in good faith and breached their fiduciary duties to the

---

**3.** All statutory references are to RSMo (Supp. 2010) unless otherwise indicated.

Trust. We find no error in the trial court's rejection of these claims.

The Trust contains several provisions pertinent to the trustees' distributions of trust principal to Marlene Brown. First, the Trust directs that "[t]he Trustee shall distribute to the Grantor's spouse, from time to time, such amounts of the principal of the trust estate as necessary to provide for the health, education, maintenance and/or support of the Grantor's spouse." In making such distributions, the Trust provides, "[T]he Trustee shall take into consideration all other sources of support which the Grantor's spouse may have to the actual knowledge of the Trustee. It is the Grantor's desire that [his] spouse be able to live in a manner which shall be consistent with [her] accustomed manner of living . . . ." Further, the Trust mandates that "the Trustee shall give primary consideration to the needs of the income beneficiary or beneficiaries [ (here, only Marlene Brown) ], rather than to the conservation of the trust estate for persons having remainder interests."

Appellant raises two arguments that the trustees did not act in good faith in carrying out these terms. First, Appellant contends that the trustees had a duty to preserve the principal of the Trust for contingent remaindermen, including Appellant, and failed to carry out that duty. Second, Appellant asserts that even if the trustees did not have such a duty, they did not follow the terms of the Trust and made distributions of principal to Marlene Brown that were unnecessary and in excess of her standard of living prior to Grantor's death. Neither argument has merit.

■ The first argument is most easily disposed of. The trustees did not have a duty according to the terms of the Trust to preserve its principal for contingent remaindermen. Appellant erroneously claims that the plain language of the Trust states that the principal must be preserved for the contingent remaindermen. In fact, the Trust explicitly mandates that Marlene Brown's needs be given primary consideration, over and above any interest in conserving the trust estate for persons with remainder interests.

Moreover, with respect to Appellant's argument that the trustees here had a legal duty to preserve the Trust's principal for contingent remaindermen, we find the authority cited by Appellant, *Klinkerfuss v. Cronin*, 199 S.W.3d 831, 845 (Mo.App. E.D. 2006), to be readily distinguishable. Although in *Klinkerfuss* we acknowledged the trustee's general duty to protect the trust, that acknowledgement was in the distinct context of a trustee's claim for attorney's fees. *Id.* at 843-46. We held there that the trustee was entitled to an award of attorney's fees because he had a duty to preserve the trust at issue by protecting it from unjust attacks. *Id.* at 845-46. *Klinkerfuss* therefore does not apply to the facts here where the Trust explicitly mandated that Marlene Brown's needs be given primary consideration over and above any interest in conserving the principal of the Trust for contingent remaindermen.

■ Appellant's second argument that the court should have found the trustees failed to act in good faith in connection with the distributions to Marlene Brown is likewise unpersuasive. We note at the outset of our analysis that Appellant's challenge to the evidentiary basis of the trial court's judgment on this issue has not been properly made pursuant to our standard of review because Appellant fails to acknowledge the evidence that supports the judgment.

Nevertheless, Appellant's second argument proceeds as follows: Appellant ac-

knowledges that the plain language of the Trust directs that necessary distributions be made to Marlene Brown to provide for her health, education, maintenance, and support. Appellant then claims that the trustees deviated from the Trust's language because Marlene Brown admitted at trial that between January 15, 2008 and October 27, 2008, she received distributions from the Trust totaling $379,000, even though Marlene Brown and Grantor's annual income prior to Grantor's death was only about $200,000. Appellant contends therefore that the trial court erred and abused its discretion by failing to conclude that the trustees did not act in good faith because these distributions to Marlene Brown were unnecessary in that they were far in excess of her standard of living prior to Grantor's death. We are unpersuaded.

Appellant's assertion with regard to the imbalance between Marlene Brown's receipts from the Trust and the level of income she enjoyed prior to Grantor's death is not borne out by the record; is based on an artificial and self-serving timeframe, and ignores the substantial and competent evidence supporting the judgment including that a substantial portion of the distributions to Marlene Brown did not go to her for her personal support but were to reimburse her for paying various obligations of the Trust.

The trial court looked at a broader time period that more accurately reflects the nature of the transactions between the Trust and Marlene Brown and found based on the accounting reports and testimony adduced at trial that from January 15, 2007 to May 14, 2009, Marlene Brown received $34,952.65 in net distributions from the Trust. The court also found that Marlene Brown has received approximately $50,000 in average annual net distributions since Grantor's death. The trial court

noted that on October 1, 2007, Marlene Brown made a $200,000 *contribution to the Trust* from the sale of her boat, which she received as a disposition upon Grantor's death, and this evidence alone guts Appellant's argument that Marlene Brown's receipts from the Trust were excessive and unnecessary.

As far as the nature of the distributions is concerned, which Appellant has ignored, the trial court made the critical and correct distinction between the distributions that were made to Marlene Brown in her status as a beneficiary for her personal support, and the distributions made to her in reimbursement for her personal expenditures on behalf of the Trust.

For instance, the record shows that during the 23-month period between January 2007 and May 2009—which includes the ten-month period during which, Appellant claims, Marlene Brown received excessive distributions from the Trust—she made the following payments totaling $390,105.42 on the Trust's behalf:

- Appellant's bankruptcy trustee fees, $44,335.95;
- Attorney's and accountant's fees, $38,319.15;
- Income taxes, $158,000;
- Trust debt, $124,802.32;
- Expenses on the Trust's lake house property, $24,648.

That means that although Marlene Brown received about $650,000 in total distributions during the 23-month period, the maximum Marlene Brown could have received from the Trust for her personal support was approximately $256,000, which amount was well within the parameters set by Grantor in the Trust to provide Marlene Brown with the standard of living she enjoyed with Grantor prior to his death.

We now turn to Appellant's argument that the trial court abused its discretion

with respect to its credibility determinations and the conclusions it drew from the evidence at trial. Appellant argues specifically that the trial court should have found that the testimony of Jason Brown and Christopher Erblich demonstrated that they failed to exercise proper oversight in making distributions of the Trust's principal to Marlene Brown. Appellant further contends that the court should have agreed with the testimony of Appellant's forensic accounting expert Joel Kamil, and should not have credited "obviously false" trial testimony of Jason Brown and Christopher Erblich that Appellant claims was inconsistent with their deposition testimony.

Appellant again ignores our standard of review and the deference given the trial court's assessment of witnesses and evidence. In challenging the evidentiary basis of the trial court's judgment, Appellant has the option of demonstrating that the judgment is not supported by substantial evidence, or that it was reached against the weight of the evidence. Logically, both sorts of challenges require, *inter alia*, that Appellant identify the evidence in the record supporting a proposition necessary to the judgment. *Houston v. Crider*, 317 S.W.3d 178, 187 (Mo.App.S.D. 2010). Here, however, Appellant fails even to *mention* some of the most basic supporting evidence for the trial court's findings and judgment, including the critical evidence of Marlene Brown's $200,000 contribution to and her numerous, considerable payments on behalf of the Trust.

Thus, Appellant has failed to properly challenge the evidentiary basis of the trial court's judgment. We find that the trial court's judgment was supported by substantial evidence in the record, was not made against the weight of the evidence, and that the trial court did not abuse its discretion with regard to its credibility determinations or its rulings with regard to

any evidentiary question. Points I and IV are denied.

**Points II and III: The Admission of Evidence of Appellant's Bias against Jason Brown, and the Failure of the Trial Court to *Sua Sponte* Recuse Itself**

In his second point on appeal, Appellant asserts that the trial court erred by admitting what he incorrectly claims to be inadmissible character evidence relating to certain written correspondence he apparently sent to Jason Brown and other family members. In his related third point, Appellant claims that as a result of its admission of that evidence, the court should have *sua sponte* recused itself. We disagree as to both these points. Appellant has failed to preserve these claims of error, so he must demonstrate plain error. Nevertheless, Appellant fails to establish that any of the evidence was inadmissible, and with respect to his argument that the trial court should have recused itself *sua sponte*, Appellant fails to identify any disqualifying bias or prejudice—which must have an *extrajudicial* source—and merely complains that the court was biased because it admitted evidence that ultimately did not help his case.

Failure to Preserve Points II and III

▮▮▮ Preservation of evidentiary questions for appeal requires an objection at the time the evidence is sought to be introduced along with the same objection being carried forward on appeal. *State v. Irby*, 254 S.W.3d 181, 189 (Mo.App.E.D. 2008) (citing *State v. Hoy*, 219 S.W.3d 796, 809 (Mo.App.S.D. 2007)). An objection to the admissibility of evidence must be specific. *Hoy*, 219 S.W.3d at 809. The purpose of this rule is to ensure that the trial court is informed of the reasons for the objection so that it can make a reasoned and informed ruling. *Id.* Any grounds that are

not raised in the objection are considered waived, and a party is prevented from raising such grounds for the first time on appeal. *Id.* (citing *McHaffie v. Bunch*, 891 S.W.2d 822, 830 (Mo.banc 1995)). When the appellant cites a new basis for excluding evidence, we reverse only where plain error has occurred. *Id.* (citing *Nelson v. Waxman*, 9 S.W.3d 601, 605 (Mo. banc 2000)).

■ Here, Appellant has failed to preserve his second and third points on appeal because Appellant did not object specifically and at the time of its admission that the evidence in question was inadmissible character evidence, or that it was irrelevant to whether the trustees breached their fiduciary duties. Moreover, Appellant never raised the issue of recusal or even suggested that the court was biased. As a result, the court had no opportunity to make a reasoned and informed ruling on any of the objections Appellant now raises.

The evidence in question consisted primarily of letters and emails Appellant sent to Jason Brown and his wife, and a letter disparaging Jason Brown sent anonymously to the Springfield Metropolitan Bar Association from the address of an Air Force Reserve Duty site in Texas to which Appellant occasionally reports. At the outset of trial, Appellant moved in limine to prohibit the introduction of evidence of his character, or of his relationships with his family members. The court denied the motion in limine to the extent that the motion sought to prohibit evidence regarding Appellant's relationships with his family members, including Jason Brown, since those relationships "certainly [were] a factor in credibility." The court reserved any ruling as to whether it would prohibit the introduction of character evidence because the court did not know what Appellant meant by character evidence or whether

any character evidence would in fact be introduced.

Subsequently, during his own testimony, Appellant withdrew the objections he had raised in his motion in limine. Appellant withdrew the objections so that he could testify regarding his relationship with his father and about other issues that were included in his motion in limine. Then, for the remainder of the trial, Appellant failed to object to the admission of any evidence on the grounds that it was impermissible character evidence or was inadmissible for any of the other reasons he had previously asserted in his motion in limine. Indeed, when Respondents adduced the particular evidence that Appellant now claims should not have been admitted, Appellant either did not make any objection, or objected on grounds other than that the evidence was inadmissible character evidence or that it was irrelevant. Appellant's counsel specifically stated "No objection" to the admission into evidence of each piece of extrinsic evidence that Appellant now claims the trial court abused its discretion by admitting.

Therefore, Appellant has waived and failed to preserve the errors he asserts in his second and third points on appeal and is limited to seeking plain error review.

Plain Error Review Standards

■ Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom. *Angeles v. Larson*, 249 S.W.3d 278, 281 (Mo.App.E.D. 2008) (citing Rule 84.13(c)). Plain error is facially evident, obvious, and clear. *Id.* We need not consider unpreserved error and no party is ever entitled to plain error review or a finding of manifest injustice or miscarriage of justice. Moreover, relief under the plain error standard is rarely

granted in civil cases, and is reserved for those situations in which hatred, passion, or prejudice has been engendered, resulting in manifest injustice or a miscarriage of justice. *Id.*

Relevant Legal Principles Applicable to Points II and III

As a general proposition, the credibility of witnesses is always a relevant issue in a lawsuit. *Mitchell v. Kardesch*, 313 S.W.3d 667, 675 (Mo.banc 2010). Anything that has the legitimate tendency of throwing light on the accuracy, truthfulness, and sincerity of a witness is proper for determining the credibility of the witness. *Newell Rubbermaid, Inc. v. Efficient Solutions, Inc.*, 252 S.W.3d 164, 171-72 (Mo.App.E.D. 2007). The jury is entitled to know information that might affect the credibility of the witness, and the weight to be given his testimony. *Id.* at 172.

One common method of impeaching the credibility of a witness is by introducing evidence of the witness's bias, interest, or prejudice. *Mitchell*, 313 S.W.3d at 675. It is well settled that the interest or bias of a witness and his relation to or feeling toward a party are never irrelevant matters. *Id.* (citing *State v. Johnson*, 700 S.W.2d 815, 817 (Mo.banc 1985)). Exploring bias is essential to the jury's process of determining the appropriate weight to be given to the witness's testimony. *Newell Rubbermaid*, 252 S.W.3d at 172 (citing *State v. Hedrick*, 797 S.W.2d 823, 826 (Mo. App.W.D. 1990)). If a witness is hostile, biased, or prejudiced against a party, the substance of his testimony may be affected by his other-than-impartial state of mind. *Id.* In such an instance, the party should be afforded an opportunity to display before an uninformed jury the bias, hostility, or prejudices held by the witness against that party. *Id.*

Accordingly, parties are permitted not only to cross-examine but also to introduce extrinsic evidence to impeach a witness by showing his or her bias, prejudice, or interest in the proceeding, regardless of whether the subject of the extrinsic evidence is independently material to the case. *Id.* at 679 (citing *Johnson*, 700 S.W.2d at 817-18). Such evidence is admissible subject only to the trial court's discretion to avoid undue prejudice. *Id.* at 681.

And with regard to Appellant's argument that the court should have *sua sponte* recused itself, a disqualifying bias or prejudice is one that has an extrajudicial source and results in an opinion on the merits on some basis other than what the judge learned from the judge's participation in the case. *Anderson v. State*, 402 S.W.3d 86, 92 (Mo.banc 2013) (citing *Worthington v. State*, 166 S.W.3d 566, 579 (Mo. banc 2005)). In cases requiring recusal, the common thread is either a fact from which prejudgment of some evidentiary issue in the case by the judge may be inferred or facts indicating the judge considered some evidence properly in the case for an illegitimate purpose. *Id.* (citing *Worthington*, 166 S.W.3d at 579).

No Plain Error as to Points II and III

Here, Appellant's assertion notwithstanding, the evidence in question was not evidence of Appellant's character but rather was evidence of Appellant's bias or prejudice. None of the evidence admitted of Appellant's interactions with his brother Jason Brown was adduced to establish that Appellant had a particular character trait. Rather, the evidence simply showed that prior to and during the pendency of this litigation, Appellant threatened Jason Brown and his wife and attempted to impugn Jason Brown's integrity. The trial court could reasonably have concluded that

proof of Appellant's hostile behavior demonstrated that Appellant was biased against Jason Brown, which the court certainly could consider in assessing the credibility of Appellant's testimony.

Nevertheless, Appellant argues that portions of the evidence of his interactions with Jason Brown were inadmissible because, in his view, they had no bearing on whether the trustees breached their fiduciary duties in this case. In effect, Appellant argues absurdly that his *credibility itself* was simply irrelevant. But the credibility of a witness is always a relevant issue in a lawsuit, and the bias of a witness is *never* an irrelevant matter. Moreover, on this record it is exceedingly clear that the evidence of Appellant's hostile behavior toward Jason Brown, a party to this litigation, and his wife was relevant and did not, as Appellant asserts, touch only on immaterial or collateral matters. The evidence showed that Appellant was biased and prejudiced against Jason Brown, giving Appellant a motive to lie at least about *Jason Brown's conduct as a trustee*, if not also about other issues at the crux of this case.

We find also that Appellant opened the door to evidence of his hostility toward Jason Brown and his wife when Appellant testified, "This lawsuit is not about revenge," because the evidence of which he complains seems to be relevant to the issue of revenge and his personal animus against his family members.

Therefore, we hold that Appellant has failed to demonstrate plain error based on the admission of any of this evidence.

Turning to Appellant's claim that the trial court should have *sua sponte* recused itself as a result of admitting this evidence of Appellant's bias, Appellant fails to identify a disqualifying bias or prejudice arising from an *extrajudicial* source, *Anderson*, 402 S.W.3d at 92, and merely complains that the court was biased because it admitted evidence that ultimately did not help his case. Clearly, recusal was unnecessary. Points II and III are denied.

## Point V: Award of Attorney's Fees to Marlene Brown in Her Capacity as a Trustee

 In his fifth and final point on appeal, Appellant contends that the trial court abused its discretion by awarding attorney's fees to Marlene Brown in her capacity as a trustee. Appellant argues that Marlene Brown's counterclaim under § 456.10-1004 for such fees was filed solely in her individual capacity, so the trial court had no basis to make its award to Marlene Brown in her capacity as a trustee. Appellant further argues that any award to Marlene Brown in her individual capacity was erroneous because the Trust already had paid all her attorney's fees, meaning that she personally had no remaining damages.[4] Appellant contends that the only way the court could properly have awarded attorney's fees would have been to make such an award to the Trust itself as a party to the litigation, but the court did not do so.

 We disagree with all Appellant's arguments. First, Appellant ignores that

---

4. We recognize that Appellant, solely in the *argument* section of his brief's "Point Relied On V," raises a similar argument with regard to the trial court's award of attorney's fees to Christopher Erblich. Because Rule 84.04(d)(1)(A) requires that in appealing a trial court decision, each of the appellant's *points relied on* shall identify the trial court ruling or action that the appellant challenges, and Appellant failed to do so with respect to the award of attorney's fees to Erblich, we do not consider any challenge to the trial court's award to Erblich. We note, however, that if we did consider such a challenge, we would reject it for the same reasons we reject Appellant's challenge of the award to Marlene Brown.

as a matter of law the Trust could not be a party to this case, since it is not a legal entity capable of suing or being sued, *Pauli v. Spicer*, 445 S.W.3d 667, 673 n.4 (Mo.App.E.D. 2014). As a result, the Trust could not be the recipient of an award of attorney's fees under § 456.10-1004. Second, we have found no Missouri case law or any other authority from which it follows that, as Appellant suggests, the trial court could not have made an award of attorney's fees to Marlene Brown in her capacity as a trustee unless she requested such an award specifically in that capacity.

■ On the contrary, we have found that the trial court had independent authority under § 456.10-1004 to make an award of reasonable attorney's fees[5] to Marlene Brown in her capacity as a trustee. Section 456.10-1004 provides that in a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy. And because trusts cannot be parties to litigation, it is only to the owner of a trust, the trustee (*see Mayer v. Lindenwood Female Coll.*, 453 S.W.3d 307, 314 (Mo.App.E.D. 2014) ("Under Missouri law, the trustee is the legal owner of the trust property....")), in his or her capacity as such, that trial courts may award any attorney's fees expended by the trust in defense of its administration.

Consequently, we find no abuse of discretion. Appellant sued Marlene Brown in her capacity as a trustee—not just in her individual capacity, or as a life beneficiary of the Trust—and thus she was a "party" under § 456.10-1004 as, specifically, a defendant-trustee. Exercising its authority

under the statute to make an award of attorney's fees to "any party" as justice and equity required, the trial court in this case entered judgment "in favor of Marlene Brown ... in her capacity as trustee of the [Trust], and against [Appellant] as and for attorneys' fees incurred by Marlene Brown ... in [her] defense against the claims against [her] brought by [Appellant]." The trial court ordered that "Marlene Brown ... in her capacity as trustee of the [Trust], shall have and recover the sum of $127,837.51 as and against [Appellant]."

The court reasonably concluded that justice and equity required this award. This litigation compelled Marlene Brown, as a trustee, to defend her administration of the Trust, and she did so successfully. In so doing, Marlene Brown defended the intent of Grantor, the settlor of the Trust. *See O'Riley v. U.S. Bank, N.A.*, 412 S.W.3d 400, 419 (Mo.App.W.D. 2013) (declaring that a trustee, by successfully defending his or her administration of a trust, defends the settlor's intent). Grantor clearly did not intend for the assets of the Trust to be depleted and not recovered, in the amount of any attorney's fees expended, anytime Appellant or anyone else unjustifiably assailed the administration of the Trust. As a result, we decline to set aside the award. Point V is denied.

### Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

Kurt S. Odenwald, J., and Gary M. Gaertner, Jr., J., concur.

---

5. Appellant does not contest the reasonableness of the particular amount of attorney's fees awarded to Marlene Brown—rather, he

deems it unreasonable to have made any such award to her.